Filed 10/5/21  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E076211 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1900344) |
| v. | OPINION |
| M.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge. Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

In this dependency case, A.R. (Minor) was removed from the care of defendant and appellant M.D. (Mother). At the 12-month hearing, the juvenile court terminated jurisdiction and granted sole legal and physical custody of Minor to F.R. (Father). Mother raises two issues on appeal. First, Mother contends the juvenile court applied the wrong legal standard when terminating jurisdiction. Second, Mother asserts the juvenile court erred by granting sole legal custody of Minor to Father. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. BACKGROUND

Minor is female and was born in March 2018. Minor is eligible for formal enrollment in the Round Valley Tribe (the Tribe) through her maternal ancestors. Father was born in Mexico and entered the United States when he was four years old. Father is a citizen of Mexico. Father began abusing alcohol and marijuana while in the eighth grade. Father was expelled from school and was placed under the jurisdiction of the juvenile court. Father graduated from continuation high school. Immediately thereafter, in 2013, Father married Y.R.; they have a daughter together, L.R. Father abused methamphetamine " 'once every three days' " in order to stay awake for night shifts. In June 2016, a domestic violence protective order, protecting Y.R. from Father, was dismissed.

Mother's and Father's relationship began in 2017. Approximately six months into their relationship, Mother and Father learned of Mother's pregnancy. Father was present for the first four months of Mother's pregnancy, but, in August 2017, Father was arrested for gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5).

2

Ultimately, Father was convicted and incarcerated. Father was sentenced to prison for 10 years but he is eligible for parole in 2022. Father has maintained his sobriety while incarcerated but admits that drugs remain a temptation for him. Father divorced Y.R. in 2018, and Y.R. has sole legal and physical custody of L.R.

B. DETENTION

Mother abuses methamphetamine and marijuana. Mother suffers visual and auditory hallucinations. Mother thought she saw worms coming out of Minor's nose and needed to take Minor to the hospital. On one occasion, Mother came into a room where Minor was playing and yelled, " 'Why are you staring at me?' " Mother believed there was a person in the corner of the room staring at her. On another occasion, Mother cut apart a mattress after hearing noises coming from it. Mother left stove burners on and left cleaning solution containers within Minor's reach. Minor was placed in foster care on September 6, 2019. After Minor's removal, Mother pushed her mother (Maternal Grandmother) into a doorway and threw a small table against a wall.

C. JURISDICTION AND DISPOSITION

At a hearing on October 1, 2019, Father's attorney told the court that Father "feels strongly that he is the biological father" of Minor. During a hearing on October 21, 2019, the juvenile court asked if the issue of parentage had been resolved. Father said he was in jail at the time of Minor's birth, but that he met Minor approximately five times when she visited him either in jail or in prison. At the request of Mother's attorney, the court deferred the issue of parentage to the next hearing, in case Mother had an objection.

On November 7, 2019, plaintiff and respondent Riverside County Department of Public Social Services (the Department) moved Minor from her foster home to the home of Father's mother and stepfather (Paternal Grandparents). The Tribe expressed to the Department that Minor should have been placed with maternal relatives. The Department social worker explained that Maternal Grandmother's home was not available for placement because Maternal Grandmother had a history with the Department.

On December 3 and 18, 2019, the Tribe expressed frustration at the Department's failure to place Minor with maternal relatives. The Tribe explained that it did not have people who spoke Spanish and therefore it was unable to communicate with Father's family. The Department told the Tribe that Minor's paternal cultural heritage also needed to be respected.

On January 15, 2020, the juvenile court held the jurisdiction and disposition hearing. The court found true the allegations that (1) Mother has unaddressed substance abuse issues; (2) Mother has mental health issues, including hallucinations; (3) Mother has neglected Minor's health and safety; and (4) Mother engaged in domestic violence against Maternal Grandmother. (Welf. & Inst. Code, § 300, subd. (b).)[1] The court ordered reunification services for Mother.

Father's attorney noted that Paternal Grandparents provided financial support for Mother while she was pregnant with Minor and after she gave birth to Minor; and that

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

4

Minor is living with Paternal Grandparents. Based upon those facts, Father's attorney requested that Father be declared Minor's presumed father.

The juvenile court failed to address Father's request for presumed father status. The court found untrue the allegation that Father is unable to arrange for care for Minor (§ 300, subd. (g).) The court found Father is a non-custodial father who desires custody of Minor. The court placed Minor in Father's custody with Paternal Grandparents designated as Minor's caregivers.

### D. SIX MONTH REVIEW

Upon Father's release from prison, he will likely be deported to Mexico. Father's plan is to live with Minor in Tijuana, Mexico. On February 11, 2020, the Tribe intervened in the case.

On March 11, 2020, Mother admitted smoking methamphetamine for two years "off and on," and that she last smoked methamphetamine the week prior. On April 3, 2020, Mother was arrested for the felony of impersonation in order to obtain money or property. On June 3, 2020, Mother completed outpatient drug treatment. On June 25, 2020, Mother told the Department she would no longer submit to drug tests.

In July 2020, the Department obtained Mother's mental health records, which reflected Mother has been diagnosed with "Bi-Polar and related Disorder with functional social impairment." Mother was also diagnosed with "Mood Disorder Not Otherwise Specified (Unspecified Mood [Affective] Disorder), and Substance Abuse/Dependence Diagnosis: Methamphetamine Dependence." Mother failed to

regularly attend individual counseling and medication management appointments. Mother refused to take her medication because it made her drowsy.

On August 17, 2020, the Department recommended jurisdiction be terminated with sole legal and physical custody granted to Father. The Department explained that Father is incarcerated and will be deported to Mexico upon his release from prison. The Department planned to notify the Mexican consulate of the dependency case.

On August 20, 2020, the court held a hearing in the case. At the hearing, Father's attorney objected to the Department's request for DNA testing. Father's attorney again requested Father be declared Minor's presumed father. The Department asserted Father is not named on Minor's birth certificate and Father had not provided for Minor by September 2019, so he did not qualify as a presumed father.

Minor's attorney expressed surprise that Father had not been declared a presumed father given that Minor was in Father's custody. Minor's attorney requested that Father be declared Minor's presumed father. The Tribe also expressed concern that Minor was placed in Father's custody without Father being declared Minor's presumed father. The court ordered Father to file a Statement Regarding Parentage (Judicial Council of California Form JV-505) before the next hearing, and, if he did not file the form, then a DNA test would be ordered. The court said the issue of Father's parental status would be addressed at the next hearing.

On September 21, 2020, the juvenile court held a hearing in the case. Mother's attorney asserted Mother should have physical custody of Minor. The Tribe argued that placing Minor with Father would pose a detriment to Minor given Father's history of

6

substance abuse, including his manslaughter conviction.  The Tribe further argued that Father had not yet been found to be Minor's presumed father.  The Tribe argued that both parents should receive reunification services.  The juvenile court continued the matter for a contested hearing.

On September 21, 2020, Father filed a Statement Regarding Parentage (Judicial Council of California Form JV-505).  Father's attorney signed the form on behalf of Father.  On the form, Father's attorney expressed the belief that Father is Minor's father, explained that Father held Minor out as his daughter, that Father had telephonic contact with Minor, and that Minor had spent the majority of her life in Father's family's home.

Also on September 21, the juvenile court held a hearing in the matter.  The Tribe objected to Father being declared Minor's presumed father.  The Department contended that a paternity finding needed to be made in the case.  Father again requested that he be declared the presumed father.  Father said his attorney's assertions in the Statement Regarding Parentage Form were true.  The court concluded the issue would be discussed at a later hearing, so the Tribe could have time to review Father's Statement Regarding Parentage.

On October 13, Mother had an online video visit scheduled with Minor.  Minor was not on camera.  Someone[2] went to find Minor and bring her to the computer.  During that time, Mother heard a slap and then Minor ran to the couch crying.  When

_____

[2] The name of the person is redacted in the record.  We infer from context that the person was someone in Paternal Grandparents' home.

7

Minor came to the computer, someone was covering Minor's mouth, and Minor said " 'Owie.' " In mid-October, Minor had a head lice infestation. On October 26, there was a baseball-size hole in the window of Minor's bedroom at Paternal Grandparents' home.

On October 28, 2020, the Department reported that there was an "open investigation regarding inappropriate physical discipline and/or general neglect as to the home of the paternal grandparents." On October 30, 2020, Minor had a bruise under her chin, which someone said was caused by Minor slipping and falling. The Department requested the six-month hearing be continued again so that the investigation could be completed. The juvenile court continued the matter.

On November 4, 2020, the court held the six-month hearing and noted that it was the date for the 12-month hearing. There was not yet an update on the investigation involving Paternal Grandparents' home. Minor's attorney was uneasy about terminating jurisdiction while the investigation of Paternal Grandparents' home remained open. The court continued Mother's reunification services to the 12-month hearing, scheduled for November 24, 2020.

E.     TWELVE-MONTH REVIEW HEARING

In its 12-month report, the Department wrote that the investigation into Paternal Grandparents' care of Minor was still open. The Department noted that Father had been found to be a noncustodial parent but that "[n]o other findings were made regarding paternity." Nevertheless, the Department recommended that jurisdiction be terminated with sole legal and physical custody of Minor granted to Father.

8

Mother was still in a relationship with Father, who remained incarcerated. In the 12-month report, the Department wrote, "The Department is concerned that if the Dependency were to be terminated and the father is deported, and the mother goes to live with him and child, [Minor], in Mexico, without resolving the matters that led to and continue the need for removal from the mother, the child would not be safe and the Department would have no jurisdiction. [¶] However, should that occur, the Mexican government would have jurisdiction, and would be able to intervene to protect the child."

On November 22, 2020, Minor was still suffering from a head lice infestation. On November 24, 2020, the juvenile court held the 12-month review hearing. Mother opposed the termination of jurisdiction. Mother argued that Minor should not be placed in the sole custody of Father, who is in prison, and who would eventually take Minor to Mexico. Mother argued that Minor should be placed with Maternal Grandmother, if Minor had to be placed outside of Mother's care.

The Tribe's attorney noted that Father had not been found to be Minor's presumed father and argued Father did not qualify as a presumed father. The Tribe expressed concern at the lack of evidence indicating Father addressed his controlled substance addiction. The Tribe asked for Minor to spend every other week with Maternal Grandmother.

The Department asserted that the issue of presumed father status had already been litigated, and the court found Father was Minor's presumed father. The Department asserted a visitation order between the Paternal Grandparents and Maternal

9

Grandmother was not needed because the grandparents could decide visitation for themselves.

Mother objected to Father being found to be Minor's presumed father. Mother asserted Father was not on Minor's birth certificate, he was not present when Minor was born, and he had never met Minor in person. The juvenile court said, "We already had a lot of hearings on this issue" and expressed uncertainty as to why the discussion of the issue did not appear in prior minute orders. The juvenile court said, "[T]he Court again states for the record that the father, [F.R.], is the presumed father of [Minor]."

The juvenile court terminated jurisdiction and granted sole physical and legal custody of Minor to Father. In terminating jurisdiction, the juvenile court said, "At this point the Court is going to be closing the case. Conditions that originally existed no longer exist and those conditions are not likely to recur if supervision is withdrawn."

The court found the Tribe's plan of alternating weekly visitation with Maternal Grandmother was "not a suitable plan . . . given the lack of progress made by the mother in this case." The court ordered Mother and Maternal Grandmother to have shared visitation with Minor one week per month, with Maternal Grandmother supervising Mother's visitation.

## DISCUSSION

A.     <u>TERMINATING JURISDICTION</u>

Mother contends the juvenile court erred by applying section 364 when terminating jurisdiction because it was the incorrect legal standard. The Department concedes the juvenile court erred, but asserts the error was harmless.

Section 364 provides, "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify [an] initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

Section 364 applies when a child is *not* removed from the custodial parent. (§ 364, subd. (a); *In re Maya L.* (2014) 232 Cal.App.4th 81, 100.) Mother asserts, and the Department concedes, the juvenile court wrongly applied section 364 in the instant case because Minor was removed from Mother, who was Minor's custodial parent. We conclude the juvenile court erred.

Mother contends the juvenile court's error was prejudicial. We examine whether it is reasonably probable a result more favorable to Mother would have occurred absent the error. (*In re A.G.* (2020) 58 Cal.App.5th 973, 1015.) In regard to terminating jurisdiction, section 364, i.e., the incorrect standard applied by the juvenile court, requires the court to "determine whether continued supervision is necessary." (§ 364, subd. (c).) The proper legal standard to apply in the instant case is that which pertains to a child placed with a non-custodial parent. (§ 361.2, subd. (b)(3).) When determining whether to terminate jurisdiction in such a case, the court must consider "whether supervision is still necessary." (§ 366.21, subd. (e)(6).)

11

The difference between a case where a child remains with his/her custodial parent and a case where a child is placed with his/her non-custodial parent is which parent the court is focusing on when considering whether ongoing supervision is necessary. If the child remains with the custodial parent, then the primary focus will be the custodial parent, which in this case would be Mother. If the child is placed with the non-custodial parent, then the primary focus will be the previously non-custodial parent, which in this case would be Father. Accordingly, we examine whether it is reasonably probable that a result more favorable to Mother would have occurred if, in the juvenile court's analysis concerning the need for ongoing supervision, Father had been the primary focus.

The juvenile court granted Father sole legal and physical custody of Minor. One can reasonably infer from the juvenile court's custody order that the court found there was no longer a need for supervising Father's parenting of Minor. Such a finding can be inferred because the juvenile court would not have placed Minor in Father's sole care when terminating jurisdiction if the court believed there was a need for ongoing supervision of Father's parenting. Therefore, it is not reasonably probable that a result more favorable to Mother would have occurred absent the error.

Mother contends the juvenile court's error was prejudicial because Minor will likely have to live in a new country, with a father she does not know, who has an untreated substance abuse issue. The juvenile court could reasonably conclude that Mother's concerns about possible future issues would be better addressed by the family court than the juvenile court. (See *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1382

12

["The family law court is better suited to handling issues relating to custody and visitation"]; see also *In re John W.* (1996) 41 Cal.App.4th 961, 971 [different roles of juvenile and family courts]; see generally *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256-257 [modifying custody orders].)

Mother contends the juvenile court, rather than the family court, should address these issues pertaining to Minor's future safety because, in the family court, Mother will have the burden to demonstrate a significant change in circumstances and she will not have court appointed counsel to assist her. Essentially, Mother is asserting that Father's care of Minor could deteriorate, and then Mother could face difficulties addressing that issue in the family court. Mother's argument is not based on anything that has happened. Father has not physically cared for Minor. Mother has not struggled in the family court. It is not reasonably probable that the juvenile court would have prolonged the dependency case based upon events that have not occurred.

Mother contends the juvenile court's error was prejudicial because she could, in the future, join Father in Mexico and place Minor at risk due to Mother's unresolved drug abuse and mental health issues. The juvenile court could reasonably conclude that Father, because he was a non-offending parent, will adequately protect Minor from Mother.

Next, Mother contends the juvenile court's error was prejudicial because Minor could lose her tribal connections as a result of being solely in Father's care. The juvenile court ordered that Maternal Grandmother and Mother have visitation with Minor one week per month. The court made that order, in part, to preserve Minor's

13

tribal connections. Because the juvenile court took Minor's tribal connections into consideration when terminating jurisdiction, it is not reasonably probable a result more favorable to Mother would have occurred absent the error. In sum, the juvenile court's error was harmless.

### B.    LEGAL CUSTODY

Mother contends the juvenile court erred by awarding Father sole legal custody of Minor. Mother asserts the juvenile court should have granted her joint legal custody of Minor.

When a juvenile court terminates jurisdiction over a dependent child, the court may make orders pertaining to custody and visitation. (Welf. & Inst. Code, § 362.4, subd. (a).) " 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) "Sole legal custody" means only one parent has the right and responsibility to make those decisions. (Fam. Code, § 3006.)

The family law presumption in favor of joint custody does not exist in the juvenile dependency context. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.) "Rather the juvenile court, which has been intimately involved in the protection of the child, . . . make[s] custody determinations based on the best interests of the child without any preferences or presumptions.' " (*Ibid.*) "[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review the juvenile court's

14

custody order under the abuse of discretion standard. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

Mother has been diagnosed with "Bi-Polar and related Disorder with functional social impairment," "Mood Disorder Not Otherwise Specified (Unspecified Mood [Affective] Disorder), and Substance Abuse/Dependence Diagnosis: Methamphetamine Dependence." Mother declined to take medication for her mental health issues because the medication caused her to feel drowsy. Mother refused to submit to drug testing after she completed substance abuse treatment. Mother failed to follow through on plans to replace stolen documents, including Minor's birth certificate and social security card.

Mother's failure to follow through on administrative tasks that would assist Minor, such as obtaining copies of Minor's vital records, indicates Mother was not a reliable legal custodian for Minor. Given that Mother was still dealing with the issues that led to the dependency, and that she appeared unreliable in regard to accomplishing administrative tasks on behalf of Minor, the juvenile court acted within the bounds of reason when awarding sole legal custody to Father.

Mother contends the juvenile court erred by awarding sole legal custody to Father because the evidence reflects that Mother engaged in appropriate conversations with the Department's social worker about Minor's welfare, which indicates Mother was capable of making joint decisions concerning Minor's health, education, and welfare. Further, Mother asserts she is in a long-term romantic relationship with Father, which means she has positive communication with her joint decision maker. Moreover, Mother contends that joint legal custody is in Minor's best interests because, in the

15

event that Father relapses into abusing methamphetamine while in Mexico with Minor, Mother will be able to protect Minor.

" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Mother's argument explains why the juvenile court could have ordered joint legal custody, but it does not indicate why the juvenile court's order for sole legal custody was beyond the bounds of reason. As set forth *ante*, there was evidence that Mother had not resolved the issues that led to the dependency and that Mother was unreliable in terms of caring for Minor's legal needs. Because there is evidence supporting the juvenile court's order, we conclude the court did not abuse its discretion.

## DISPOSITION

The order terminating jurisdiction and the accompanying custody order are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

16